# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
R&R System Solutions, LLC ) ASBCA Nos. 61269, 61405
)
Under Contract No. N32205-16-P-4415 )

APPEARANCE FOR THE APPELLANT: Matthew R. Keller, Esq.
Praemia Law, PLLC
Reston, VA

APPEARANCES FOR THE GOVERNMENT: Craig D. Jensen, Esq.
Navy Chief Trial Attorney
Donald J. Thornley, Esq.
Trial Attorney
Military Sealift Command
Norfolk, VA

## OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

These appeals[1] arise out of the cancellation of a commercial item contract between appellant, R&R System Solutions, LLC (R&R or appellant), and the United States Department of the Navy, Military Sealift Command (MSC or the government) for buoyant ship cables. R&R filed a certified claim seeking termination for convenience costs under Federal Acquisition Regulation (FAR) 52.212-4(l), which MSC denied in two separate decisions. MSC has moved to dismiss the appeals, contending that because the contract at issue was void or voidable, it cannot form the basis for the Board's jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. MSC further argues that the appeals were untimely filed. R&R opposes the motion, arguing that the contract was valid and that its appeals were timely. We deny the motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On July 25, 2016, MSC issued Solicitation No. N32205-16-T-4412 in the form of a request for quotation (RFQ) for two floating umbilical plow cables for the USNS *Zeus* (T-ARC 7), which is a cable laying and repair ship that transports,

---

[1] The parties have agreed that the operative facts and claims for relief in both appeals are the same for purposes of this motion (*see* gov't mot. at 1 n.1; app. opp'n at 2 n.1). Accordingly, the Board will treat them as such throughout this decision.

deploys, retrieves and repairs undersea oceanic cables. Offerors were advised that award would be made "to the responsible, technically acceptable quoter, whose quote. conforming to the [RFQ], offers the lowest evaluated price." The RFQ was a 100% small business set-aside. (R4, tab 2 at 18-22)

2. The RFQ was assigned North American Industry Classification System (NAICS) commercial item supply code 335921, and incorporated by reference FAR 52.219-6, NOTICE OF TOTAL SMALL BUSINESS SET-ASIDE (NOV 2011) (15 U.S.C. § 644) (R4, tab 2 at 18, 27). Also under that clause, a small business concern "means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts. and qualified as a small business under the size standards in the solicitation." FAR 52.219-6(a). Here the solicitation required NAICS code 335921 with a size standard of 1,000 (*id.* at 15).

3. The RFQ also incorporated by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (MAY 2015), which includes a subparagraph addressing terminations for convenience and a subparagraph addressing payments (R4. tab 2 at 23).

4. The FAR 52.212-4 termination for the government's convenience subparagraph states in pertinent part:

> The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience.... Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination.

FAR 52.212-4(l). The RFQ did not include any other provisions governing terminations for convenience.

5. The FAR 52.212-4 payments subparagraph states in pertinent part that "[p]ayment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in [the] contract." *See* FAR 52.212-4(i)(1). The RFQ contained no provisions allowing for progress payments.

6. The government issued two modifications to the RFQ extending the closing date for the solicitation. Both modifications direct offerors to contact a person the

2

government has identified as the contract specialist if they have questions, and provide her contact information. (R4, tabs 3-4; gov't mot. at 3, ¶ 2)

7. By letter dated August 17, 2016, R&R submitted its quotation. The submission described R&R as a "small disabled veteran owned company" providing "Professional Engineering, Quality Management and Consulting services with technical subject matter expertise and credentials" in a number of areas. The submission further stated that

> R&R has chosen Hydrocable Systems of Aberdeen Scotland with 14 worldwide offices as the supplier of the requested Plow Umbilical cables. Hydrocable Systems is a supplier of various cable types to the US Government and other international government agencies. R&R's response is based on Hydrocable Systems drawing SK 5768 Issue 1 contained within Attachment A.

(R4, tab 5 at 50, 58) The submission also provided for progress payments of 15% upon contract award, 35% upon receipt of materials, 30% upon factory acceptance testing and 20% upon delivery (*id.* at 51).

8. According to a report showing R&R's FAR and Department of Defense FAR Supplement (DFARS) certifications for the period between December 4, 2015 and December 3, 2016, for purposes of FAR 52.212-3, OFFEROR REPRESENTATIONS AND CERTIFICATIONS – COMMERCIAL ITEMS (NOV 2015); and FAR 52.219-1, SMALL BUSINESS PROGRAM REPRESENTATIONS (OCT 2014), R&R certified it was a small business for a number of different NAICS codes. The NAICS code contained on the RFQ, 335921, was not one of them. (R4, tab 6 at 65-67, 77-79)

9. Along with its motion to dismiss, MSC submitted declarations from two MSC employees – a supervising contract specialist and the deputy director of MSC's Ship Repair and Fleet Support Division – both of whom describe their understanding of the events leading up to the filing of these appeals. According to the supervising contract specialist, MSC received a total of three quotations in response to the RFQ, including the quotation from R&R. After reviewing the quotations, the source selection team determined that R&R's was the lowest priced, technically acceptable offer from a responsible small business. (Perry decl. ¶¶ 6-7)

10. On September 16, 2016, MSC issued Purchase Order No. N32205-16-P-4415 (purchase order) as a commercial item small business set-aside in the amount of $556,098.68 (R4, tab 7 at 103). Although the assigned NAICS code in the RFQ was 335921, the NAICS code in the purchase order was now identified as 541330, one of the

3

codes appearing in R&R's FAR and DFARS certification[2] (*id.*). The purchase order also contained a provision regarding "proposal incorporation" which stated that "this award consummates the contract which consists of the following documents: (a) The Government's Solicitation and your offer inclusive of all discussion and clarification responses and (b) the award/contract" (*id.* at 108). Aside from the differences stated in this paragraph including the two different NAICS codes, the terms and conditions of the RFQ and the purchase order were the same in all material respects.

11. The supervising contract specialist signed the purchase order on behalf of MSC on September 16, 2016, and R&R's president signed it on September 18, 2016 (R4, tab 7 at 103).[3]

12. On September 20, 2016, the contract specialist informed the supervising contract specialist that the source selection team had "missed" the fact that R&R's quote indicated it intended to provide cables manufactured by a firm located in Scotland, raising a question within MSC about a potential conflict with the contract requirement that the cables be manufactured or produced by small business concerns located in the United States (Perry decl. ¶ 8). Notwithstanding that potential conflict, on September 22, 2016, representatives from MSC and R&R participated in a one-hour design review meeting via telephone conference (gov't mot. at 8; R4, tab 9 at 135).

13. On September 23, 2016, the contract specialist signed contract Modification No. P00001 (Mod. 1), incorporating by reference FAR 52.232-16, PROGRESS PAYMENTS (APR 2012), "due to the extensive costs incurred by the Contractor in the development of these cables" (R4, tab 9 at 134). Mod. 1 listed four progress payments, with the first being "15% of contract value after design review with MSC. First design review meeting is scheduled for 22 September 2016, via phone conference between MSC Representatives and R&R Systems." (*Id.* at 135) R&R's president signed the modification on September 24, 2016 (*id.* at 134).

14. An undated three-page summary of the topics discussed during the September 22, 2016 design review meeting does not indicate whether the parties discussed MSC's concerns with respect to R&R's use of a non-U.S. firm to manufacture the cables, or the issue of progress payments (R4, tab 8).

15. Even as it was participating in various contractual activities with R&R, MSC remained concerned that the use of a Scottish manufacturer to produce the cables violated FAR 52.219-6(d). Accordingly, the contracting team consulted with other

---

[2] The difference between the type of work covered by the two NAICS codes is not pertinent for purposes of this decision.

[3] Unless stated otherwise, subsequent use of the terms "contract" and "purchase order" in this decision refer to this document.

MSC officials, including MSC's small business personnel and legal counsel, and ultimately determined that the contract had been "mistakenly awarded" to R&R. (Perry decl. ¶ 9)

16. On September 27, 2016, R&R submitted an invoice in the amount of $83,414.80, which represented 15% of the contract price (R4, tab 15 at 367). Two days later, by email dated September 29, 2016, MSC issued a stop-work order on the contract (R4, tab 14 at 359).

17. By letter dated October 5, 2016, MSC notified R&R that it was cancelling the award, alleging that R&R's quote "was not responsive to the solicitation and therefore void" because it "violate[d] FAR 52.219-6 in that the manufacturer of the two (2) cables...is not a domestic small business" (R4, tab 10 at 138). The cancellation notice further stated that R&R was not entitled to progress payments because the RFQ did not authorize them, and that "R&R's acceptance of the government offer was strictly confined to the terms of the solicitation" (*id.* at 139). The notice then informed R&R that:

> If you disagree as to whether R&R is owed any funds, you must provide your legal reasoning and a specific accounting of any funds R&R actually expended – with proof via receipts, etc. – within 30 days of the day you receive this letter. I will consider your claim and provide you an answer with[in] 30 days of receiving it.

(*Id.*) The cancellation notice did not state that it was a contracting officer's final decision; nor did it include any statement describing R&R's appeal rights.

18. R&R contested the cancellation by letter dated October 6, 2016, suggesting that because it was the "only technically accepted responder, and had provided the best pricing," MSC should waive FAR 52.219-6(d) for the procurement. R&R then noted that because it had participated in the design review meeting on September 22, 2016, per the terms of Mod. 1 it was entitled to a progress payment of 15% of the total contract price. (R4, tab 11 at 141-42) R&R included with its October 6, 2016 letter a copy of Mod. 1 and the summary of the September 22, 2016 design review meeting (*id.* at 143-46).

19. By email dated November 3, 2016, MSC advised R&R that it was "aware of your request for payment of [the] invoice for...15% of the awarded value" of the contract, and unless informed otherwise, MSC would "consider this request your claim due to the cancellation of this purchase order." MSC also informed R&R that:

5

> In order to properly assess this claim, we need evidence of
> what work was performed on the two (2) cables besides the
> "Design & Review" meeting. If materials were ordered,
> and/or production hours were utilized, we would need to
> see purchase orders and a breakdown of the hours at the
> current labor rate to determine an acceptable claim amount.
> If you could please provide this information to me, I can
> then move forward for a claim payment.

(R4, tab 14 at 361-62) R&R responded by email dated November 4, 2016, confirming that the request for payment of the invoice represented its claim for payment under the contract (*id.* at 361). R&R also reiterated its contention that it was entitled to that payment pursuant to Mod. 1, and requested that MSC advise when it could expect to receive the funds (*id.*).

20. It appears that thereafter R&R and the contract specialist continued to discuss R&R's payment request, because in January 2017 she informed her superiors that the contract had not yet been closed out, and that R&R was seeking almost $100,000. They instructed her to continue the negotiations with R&R and to keep them informed. (Perry decl. ¶¶ 14-16; Martin decl. ¶ 9)

21. By email dated January 23, 2017, the contract specialist informed R&R's president that "[m]y supervisors agree to the $90,000.00 as a settlement. We will cancel the contract but leave this remaining amount of funding for invoice purposes." R&R's president responded by email of the same date, stating "[t]hank you and R&R accepts the $90,000.00 as settlement." (R4, tab 14 at 332-34) R&R later submitted a second invoice dated February 1, 2017, in the amount of $88,975.79.[4] Although the invoice referenced the provision in Mod. 1 allowing progress payments, it did not include a cost breakdown. (R4, tab 12 at 150, 241)

22. In March 2017, the supervising contract specialist learned for the first time that the contract specialist had executed Mod. 1 authorizing progress payments, and that she and R&R had agreed to settle R&R's progress payment request for $90,000. The deputy director was similarly unaware of Mod. 1 or the settlement agreement until March 2017. Both deny approving the contract specialist's settlement offer.[5] (Perry decl. ¶¶ 16, 18; Martin decl. ¶¶ 12-13)

---

[4] The reduction in the settlement figure from $90,000 was an "accommodation" R&R made at the request of the government (app. opp'n at 6 n.10).

[5] Throughout its motion, the government attempted to distance itself from the contract specialist by arguing that she lacked authority to enter into Mod. 1 and to make the settlement offer; however, these arguments are not ripe for consideration at this time.

23. By email dated March 15, 2017, R&R's president forwarded to the supervising contract specialist the two emails between himself and the contract specialist dated January 23, 2017, in which they mutually agreed to the settlement amount of $90,000 (R4, tab 14 at 332-33). The following morning. March 16, 2017, the supervising contract specialist advised R&R's president by email that MSC was "conducting a Contract Review Board regarding this contract" and therefore needed "a complete breakdown of actuals" for the settlement amount, as the invoice R&R submitted did not have that detailed information (*id.* at 331). The record does not include any response from R&R to that email. That afternoon, the supervising contract specialist emailed R&R's president a second time, and informed him of the following:

> After conducting a Contract Review Board, [MSC] is withdrawing the offer of $88,975.79 for the canceled contract. The offer was not properly made as the Government is required to have justification of the cost associated with this amount (i.e. labor hours, material, Engineering etc.).
>
> We look forward to receiving your administrative claim to the contracting officer, and will expeditiously process it. Again, we need specific justification for all claimed amounts related to the termination for convenience of the Government.

(*Id.*) That email did not refer to the withdrawal of the settlement offer as a contracting officer's final decision; nor did it include any statement describing R&R's appeal rights.

24. By letter dated May 2, 2017, R&R submitted its certified claim to MSC requesting a contracting officer's final decision and indicating that pursuant to FAR 52.212-4, it was seeking termination costs associated with its performance under the contract (R4, tab 12). The claim disputed in detail the accuracy of MSC's contention that its quote violated FAR 52.219-6(d), but also noted that the issue did not "impact the Agency's obligation to pay [R&R] its termination costs" (*id.* at 151-53). The claim further referenced MSC's failure to pay the original invoice for the first progress payment, and alleged that MSC breached the settlement agreement by withdrawing its offer (*id.* at 149-51). The claim then set forth a breakdown of R&R's convenience termination costs totaling $102,947.08 (*id.* at 153-56).

25. MSC issued a contracting officer's final decision by letter dated May 16, 2017 (R4, tab 13). The record does not identify the method of delivery or the date that R&R received the final decision. MSC first identified FAR 52.249-2 and two other provisions from FAR Part 49 as the "applicable termination for convenience-related"

7

regulations. MSC then noted that because it had "complete termination-for-convenience discretion," it would not engage in further discussion concerning whether R&R's quotation violated FAR 52.219-6(d). (*Id.* at 325 n.2)

26. MSC denied R&R's request for the progress payment, characterizing the design review process as still ongoing at the time the contract was cancelled, rather than complete at the conclusion of the September 22, 2016 design review meeting. MSC indicated the letter was intended to serve as "the contracting officer's final decision as to the progress payment claim only" and included a description of R&R's appeal rights (R4, tab 13 at 325-27). With respect to the actual termination costs detailed in R&R's claim, MSC requested additional information on the individual items, and indicated that R&R would have to resubmit the information on a Standard Claim Form 1436. Only after receipt of that information would MSC provide a final decision "via standard form within the regulatory time limit." (*Id.* at 327-29)

27. The parties continued to communicate via email in June and July 2017 concerning R&R's termination costs (R4, tab 14 at 341-50). By email dated August 1, 2017, the supervising contract specialist contacted R&R's president, stating the following:

> I have discovered a work around to move forward with the contract that we have in place with your company. I have consulted with SBA and others, so the path to resume the contract is clear, subject to R&R concurrence.
>
> My question is are you willing to move forward with the contract? If so, we will have to MOD the contract to the following below:
>
> 1. Award will be corrected to show NAIC Code solicited and quoted on: 335921.
> 2. Change the POP to end 2/18/2018[.]
> 3. Cancel MOD 1 for progress payments since those were not proper or legal.

(*Id.* at 356) The supervising contract specialist then requested that R&R's president "please advise if we can move forward with the contract including the changes above" (*id.*).

28. By email dated August 2, 2017, R&R's president responded, deferring on the question of whether it wished to move forward with the contract and instead asking why MSC's proposal did not address R&R's claim. The supervising contract

specialist responded by email of the same date, stating that despite R&R's claim, which he asserted "we are basically done processing," MSC was:

> [T]rying to figure out any potentially better way forward. We have looked at different approaches and have arrived at one which should be good news for R&R: contract completion.... We must move forward now either by R&R completing the existing contract, or by soliciting a new contract and issuing R&R our claim decision.
>
> ....
>
> I want to give you time to consult with Hydrocable on their ability to proceed, but MSC needs your decision not later than August 4th.

(*Id.* at 355)

29. By email dated August 4, 2017, R&R filed its notice of appeal with the Board, 80 days after the date of MSC's May 16, 2017 final decision. The notice of appeal identified the contract by number, alleged a breach of contract and included a signed copy of the contract. The Board docketed that appeal as ASBCA No. 61269.

30. By letter dated August 10, 2017, MSC issued a second contracting officer's final decision, this time addressing R&R's claimed termination costs. The record does not identify the method of delivery or the date R&R received the final decision. Noting that it analyzed the claim under the convenience termination provision at FAR 52.212-4(l), with reference to FAR Part 49 for purposes of quantifying costs, MSC denied certain portions of R&R's claim and allowed other portions, agreeing to a total payment of $38,528.40. (R4, tab 1 at 9-16) This letter also set forth R&R's appeal rights (*id.* at 15-16).

31. By email dated November 6, 2017, R&R filed a second notice of appeal with the Board, 88 days after the date of the August 10, 2017 final decision. The notice of appeal identified the contract by number, alleged a contract breach and forwarded a copy of the final decision. The Board docketed the second appeal as ASBCA No. 61405 and consolidated it with the earlier appeal.

32. R&R's complaints in the two appeals are virtually identical, each alleging entitlement to its termination for convenience costs, and setting forth two alternative counts of breach of contract. The first count is based upon MSC's failure to pay the settlement amount, the second upon MSC's failure to pay the first progress payment.

33. MSC's answers to R&R's complaints are also virtually identical. In its answers, MSC denies that the cancellation notice terminated the contract for convenience, instead characterizing it as an award cancellation, and averred that it only "used [termination for convenience] procedures as the best tool to assess [R&R's] claim" (answer ¶¶ 18, 20, respectively). It also raises numerous affirmative defenses. Several defenses allege that, for a variety of reasons, the contract, Mod. 1 and the settlement offer were void *ab initio* or voidable, or otherwise illegal and not permitted under the FAR. Two defenses challenge R&R's entitlement to payment based on the actual work it performed in relation to the FAR provisions applicable to progress payments. One defense alleges that the appeal is moot due to MSC's agreement to pay $38,528.40 in its August 10, 2017 final decision. The final two defenses raise jurisdictional challenges based upon R&R's alleged failure to timely file its notices of appeal.

## DECISION

R&R bears the burden of establishing the Board's jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156. The CDA grants this Board jurisdiction over appeals from a decision of a contracting officer of any executive agency "relative to a contract made by that agency." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (quoting 41 U.S.C. § 7105(e)(1)(A)).

In support of its motion to dismiss, MSC makes what are essentially two jurisdictional arguments: 1) that the contract is void so the Board lacks jurisdiction; and 2) that the appeals were untimely. We address both arguments in turn below.

## Voidness Does Not Impact the Board's Jurisdiction

MSC alleges that because the contract at issue in this appeal was void, there is no valid contract upon which to base the Board's jurisdiction. MSC raises a variety of arguments in support of this contention, among them that R&R's quotation was non-responsive because it failed to comply with FAR 52.219-6(d) and was improperly premised upon receipt of progress payments; that the award was based upon a mutual mistake of fact regarding the propriety of R&R's quotation; that Mod. 1 and the settlement agreement arose from a void contract and therefore are void themselves (and that the contract specialist lacked authority for either contractual action); and that Mod. 1 materially altered the terms of the RFQ, meaning that the award was void for violating competition requirements. MSC's numerous challenges to the contract's validity are in essence defenses against its enforceability, and are therefore not relevant to the question of the Board's jurisdiction.

10

To establish jurisdiction under the CDA, an appellant need only allege the existence of a contract, not prove that it is valid. *See Dongbuk R&U Engineering Co.,* ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,637 (citing *Total Medical Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (Fed. Cir. 1997)). Whether a contract actually exists goes to the merits of the appeal, not to the Board's jurisdiction. *Black Tiger Company,* ASBCA No. 59189, 16-1 BCA ¶ 36,423 at 177,570. Thus MSC's arguments regarding voidness are not ripe for consideration at this time. *See Do-Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 639 (Fed. Cir. 1989) (presence of a valid defense does not oust a tribunal of jurisdiction unless the defense is jurisdictional); *The Boeing Co.,* ASBCA No. 54853, 06-1 BCA ¶ 33,270 at 164,890 (unenforceability and illegality are affirmative defenses not jurisdictional impediments); *see also Four-Phase Systems, Inc.,* ASBCA Nos. 26794, 27487, 84-1 BCA ¶ 17,122 at 85,288 (where government challenged Board's jurisdiction over appeal involving contract that was cancelled due to illegality, noting that "if the Board were to decide that the contract was properly voided, it would be deciding an issue as to the merits of appellant's claims, not that the claims did not relate to a contract so as to oust itself of jurisdiction").

Here, R&R plainly and explicitly asserted the existence of a contract in its notices of appeal (SOF ¶¶ 29, 31). Indeed, it submitted a copy of the contract with its first notice of appeal and the contracting officer's final decision with the second (*id.*).[6] Accordingly, R&R has made non-frivolous assertions of a contract sufficient to establish the Board's jurisdiction. *See Black Tiger,* 16-1 BCA ¶ 36,423 at 177,570.

R&R's Appeal was Timely

With respect to its second jurisdictional argument, MSC alleges that R&R failed to timely file the appeals under the CDA, which requires contractors to file their notices of appeal with the Board "within 90 days from the date of receipt of a contracting officer's decision." 41 U.S.C. § 7104(a); *see Military Aircraft Parts,* ASBCA No. 60308, 17-1 BCA ¶ 36,680 at 178,609. The 90-day deadline is jurisdictional and cannot be waived. *Cosmic Construction Co. v. United States,* 697 F.2d 1389, 1390 (Fed. Cir. 1982). While R&R must establish that the appeal was timely filed, it is MSC's burden to establish the date the contractor received the contracting officer's final decision. *Military Aircraft Parts,* 17-1 BCA ¶ 36,680 at 178,609.

MSC's challenge to the appeals' timeliness is not based upon the elapsed time between the May 16 and August 10, 2017 final decisions and the dates of R&R's

---

[6] R&R raised several other arguments concerning why the contract was not void but based upon our decision herein, we need not address those arguments at this time.

notices of appeal.[7] Rather, MSC ignores those two final decisions altogether, and instead characterizes the cancellation notice, issued in October 2016, and the withdrawal of the settlement offer, which occurred in March 2017, as "*per se*" contracting officer's final decisions. MSC then argues that R&R's failure to timely appeal either of these "*per se*" final decisions within the 90-day time frame deprives the Board of jurisdiction (gov't mot. at 29-32).

MSC's timeliness argument is wholly unsupported by the facts of these appeals and the relevant case law. The record establishes that from the inception of this dispute, despite their initial disagreement about the propriety of the cancellation, the parties consistently treated R&R's request for payment as a request for costs associated with a termination for convenience. The cancellation notice itself invited R&R to submit additional information if it "disagree[d] as to whether R&R is owed any funds." (SOF ¶ 17) The parties continued to discuss settlement into January 2017, when the contract specialist informed her superiors that her negotiations with R&R were ongoing (SOF ¶¶ 20-21). Even when, in March 2017, the supervising contract specialist withdrew the settlement offer, he nevertheless invited R&R to submit "your administrative claim to the contracting officer" with "specific justification for all claimed amounts related to the termination for convenience" (SOF ¶ 23).[8]

In response to that invitation, R&R submitted a properly certified claim demanding a contracting officer's final decision. The claim sought costs allegedly due under the commercial item convenience termination provision, FAR 52.212-4(l) – the only convenience termination provision contained in the contract – and both of MSC's final decisions applied convenience termination principles to analyze the claim (SOF ¶¶ 25-26, 30). Moreover, after MSC issued its first final decision denying R&R's request for the progress payment, the parties continued discussing the unresolved question of R&R's termination costs until shortly before R&R filed its first notice of appeal (SOF ¶¶ 27-28).

Based upon the foregoing, the Board finds that for purposes of the government's motion, the October 2016 cancellation notice was in substance a termination for convenience, and the communications that took place post-cancellation, including the March 2017 withdrawal of the settlement offer, constituted communications intended to

---

[7] While the CDA identifies date of receipt of the final decision as the date from which timeliness should be filed, 41 U.S.C. § 7104(a), the record does not provide that information for either final decision (SOF ¶¶ 25, 30). Obviously, however, the receipt date is no earlier than the dates of the actual decisions themselves.

[8] We also note that neither the cancellation notice nor the withdrawal of the settlement offer described R&R's appeal rights, as required under 41 U.S.C. § 7103(e) (SOF ¶¶ 17, 23). While not dispositive, the absence of this information supports the notion that neither communication was intended to serve as a final decision.

12

resolve R&R's request for termination costs. On its own, a convenience termination does not constitute a contracting officer's final decision, or a government claim, one or the other of which is required to establish the Board's jurisdiction under the CDA. *See CME Group, Inc.*, ASBCA No. 57446, 11-2 BCA ¶ 34,792 at 171,251 (citing *Larry G. Pyle*, ASBCA No. 41155, 90-3 BCA ¶ 23,252 at 116,668); 41 U.S.C. § 7103(a). Although MSC averred in its answers that the cancellation notice was not a termination for convenience, and that it only "used [termination for convenience] procedures as the best tool to assess [R&R's] claim" (SOF ¶ 33). we find that characterization to be a distinction without a difference.

R&R's certified claim represented its final attempt to resolve its payment request, and only after MSC responded to the claim with the May 16 and August 10. 2017 final decisions did the 90-day clock begin to run. R&R filed its notice of appeal in ASBCA No. 61269, 80 days after the date of MSC's first final decision, and filed its notice of appeal in ASBCA No. 61405, 88 days after the date of MSC's second final decision (SOF ¶¶ 29, 31). Both appeals were therefore timely filed. Accordingly, MSC's arguments to the contrary must fail.

CONCLUSION

The government's motion to dismiss the appeals for lack of jurisdiction is denied.

Dated: February 19, 2019

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

13

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61269, 61405, Appeals of R&R System Solutions, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals